**LOCAL #1547, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, an unincorporated Labor Association, Plaintiff,**

**v.**

**LOCAL #959, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS, INDEPENDENT, Defendant, and The National Labor Relations Board, Intervenor.**

**Civ. No. A–64–72.**

United States District Court,
D. Alaska.
Jan. 4, 1973.

---

Robert M. Goldberg, Anchorage, Alaska, for plaintiff.

B. G. Johnson, Johnson, Tobey & Kissane, Anchorage, Alaska, George H. Davies, Vance, Davies & Roberts, Seattle, Wash., for defendant.

Glen M. Bendixsen, Chief of Sp. Litigation, N. L. R. B., Washington, D. C., for intervenor.

## MEMORANDUM OF DECISION AND ORDER

PLUMMER, Chief Judge.

This is an action seeking injunctive and compensatory relief arising out of an alleged breach of a "no-raiding" agreement. The case comes before the court on a motion by intervenor, National Labor Relations Board (hereinafter NLRB) to dismiss the complaint for failure to state a claim upon which relief can be granted or, alternatively, for summary judgment. The following facts are alleged in the complaint and admitted by defendant.

Plaintiff is a local member of the International Brotherhood of Electrical Workers, AFL–CIO (hereinafter IBEW), and since 1961 has been the collective bargaining representative for a unit of approximately 250 employees of ITT Arctic Services, Inc., working on the White Alice Communications System in Alaska. Defendant is a local member of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Independent (hereinafter Teamsters).

IBEW and Teamsters executed an agreement in 1968, to which plaintiff and defendant locals are bound, which provides in relevant part as follows:

"1. Each union agrees to refrain from organizing or representing employees in any situation where an established collective bargaining relationship exists involving the other union. For the purpose of this provision, the term "established collective bargaining relationship" means any situation in which either union (a) has been recognized by the employer as the collective bargaining representative of the employees involved, or (b) has been certified by the National Labor Relations Board or other federal, state or provincial agency as the collective bargaining agent of the employees.

\* \* \* \* \* \*

"3. If any dispute over the implementation of this agreement shall arise at the local union level, settlement shall first be sought between the District Vice President of the IBEW and the Area Conference Director of the IBT [Teamsters]. Upon their failure to reach agreement, the dispute shall be settled by the International Presidents of both unions or their designated representatives."

In December of 1971 and January of 1972 representatives of defendant began contacting the White Alice employees represented by plaintiff to solicit "Teamster Authorization" cards designating defendant as the employees' collective bargaining representative. On February 4, 1972, defendant filed a petition with the NLRB for certification as the bargaining representative of the White Alice unit. A hearing was held on this petition on March 2, 1972, at which time plaintiff specifically raised the no-raiding agreement as a bar to defendant's action. Nevertheless, on March 13, 1972, the NLRB ordered the election to be held. The election was conducted by mailing out ballots on April 5, 1972, to be returned by May 7, 1972. While the balloting was being conducted plaintiff instituted the present suit. On May 5, 1972, this court granted the NLRB's motion to intervene and issued a temporary restraining order, after a hearing held with notice, prohibiting defendant from engaging in election activities and also prohibiting the NLRB from tabulating or publishing the results of the election pending a decision by the court on the merits.

Defendant denies the allegation in the complaint that in January of 1972 plaintiff invoked the dispute—settlement mechanism provided in paragraph three

of the no-raiding agreement (quoted above) and that "meetings were then held at the appropriate levels described therein." Rather, defendant asserts as an affirmative defense that the present suit is barred because plaintiff has not exhausted the settlement procedures provided in the contract.

It is in this posture that the present motion by intervenor NLRB for dismissal or summary judgment comes before the court. For the reasons that follow, the court has determined that the motion should be denied.

■ The conflict in this case is between two fundamental goals of national labor policy, one to preserve employees' freedom to select a bargaining representative of their own choosing and the other to foster a healthy strength and stability in labor unions. See N. L. R. B. v. Weyerhaeuser Co., 276 F.2d 865, 873–875 (7th Cir. 1960). The first goal has been expressly codified in Section 7 of the Labor-Management Relations Act of 1947, which provides:

> "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives *of their own choosing*, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157 (Emphasis added).

The second goal finds effect, for example, in the NLRB's certification year rule. See e. g. Brooks v. National Labor Relations Board, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954). No-raiding agreements, such as the one between the IBEW and the Teamsters, are designed to promote the second of these goals. In the words of Arthur Goldberg, discussing the origin of the no-raiding agreement between the AFL and the CIO: "In addition to being fruitlessly expensive and unproductive, raids were also destructive of an important element in democratic trade-unionism—the solidarity of the workers." Goldberg, AFL–CIO: Labor United 76–77 (1956).

However, as the present case clearly illustrates, such agreements, if enforced, limit employees' freedom to choose their bargaining representatives. Consequently, a federal court is thrust directly into this conflict when a suit is brought to enforce a no-raiding agreement.

The dispute between plaintiff and intervenor concerns the propriety of judicial action in raiding cases such as this where the NLRB has already ordered an election. Intervenor NLRB contends that in these circumstances the federal courts are without power to enforce a no-raiding agreement. To reach this issue it is first necessary to determine whether the court has jurisdiction over suits for breach of inter-union contract, and, if so, whether no-raiding agreements are enforceable even where no action has been taken by the NLRB.

■ Since an unincorporated association's citizenship for diversity purposes is that of each of its members, United Steelworkers v. R. H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L. Ed.2d 217 (1965), federal jurisdiction over inter-union suits to enforce no-raiding agreements must generally rest upon section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). That statute is relied upon in this case. It provides:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, *or between any such labor organizations*, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (Emphasis added).

While some courts have held that this statute is directed primarily at suits involving collective bargaining contracts and that it does not authorize federal jurisdiction over suits between unions to enforce no-raiding agreements, Doll &

Toy Workers, AFL–CIO v. Metal Polishers, Buffers, Platers & Helpers, AFL–CIO, 180 F.Supp. 280 (S.D.Cal.1960), the better and more prevalent view is that the federal courts do have jurisdiction in such cases. Textile Workers v. United Textile Workers Union, 258 F.2d 743 (7th Cir. 1958); Firemen and Oilers International v. Machinists International, 338 F.2d 176 (5th Cir. 1964); Retail Clerks International v. Lion Dry Goods, 369 U.S. 17, 26, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962) (dictum). Nor does the Norris-LaGuardia Act bar the exercise of jurisdiction over the claim in this case for injunctive relief, because the no-raiding agreement contains a compulsory arbitration clause. Boys Markets, Inc. v. Retail Clerks Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); cf. Brick & Clay Workers v. District 50, 80 LRRM 2871 (E.D.Mo. 1972). Therefore this court has jurisdiction over the present case.

■ Next, it is possible to argue that the policy favoring freedom of employee choice unconditionally outweighs the policy favoring union stability, and therefore that no-raiding agreements are unenforceable in the courts. Defendant asserts this argument as an affirmative defense, but Intervenor does not take this position on the present motion. The argument overlooks the possibility that the relative importance of the two policies will differ in particular cases, and it would deny courts all opportunity to give optimum effect to both policies. Indeed, the federal courts have a mandate to transmute national labor policy into rules governing actions brought under section 301(a) of the Labor Management Relations Act: "the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws." Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957). In any event, a decision as to whether a no-raiding agreement is void as against public policy is properly left to Congress. See generally Sovern, Section 301 and the Primary Jurisdiction of the NLRB, 76 Harv.L.Rev. 529 (1963). Therefore a no-raiding agreement may be enforced by the federal courts in appropriate circumstances.

The factor relied upon by the NLRB to show that enforcement is not available in this case is that the NLRB Regional Director ordered a representation election. Intervenor invokes the rule of Carey v. Westinghouse Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), in which the Court recognized that, although a federal court could compel arbitration of a work dispute between two unions, a subsequent finding by the NLRB contrary to that of the arbitrator would take precedence. "The superior authority of the Board may be invoked at any time." 375 U.S. at 272, 84 S.Ct. at 409. Intervenor argues that for the court to enforce an agreement which the NLRB has disregarded would undercut the superior authority of the Board. Accordingly, it is argued, the suit must be dismissed.

Plaintiff distinguishes *Carey* on the ground that the dispute in that case was over the proper definition of the bargaining unit, a determination left expressly to the NLRB under the statute. See 29 U.S.C. § 159(b). The issue in this case, however, is which of two competing policies should be vindicated, and which subordinated, in resolving a dispute between rival unions; plaintiff and intervenor merely disagree on the proper forum for making this determination.

The significance which plaintiff draws from this distinction is not clear. If the argument is that the statute does not entrust to the Board the responsibility for determining under what conditions to honor a no-raiding agreement as clearly or expressly as it does the responsibility for determining the proper definition of the bargaining unit, the answer is that the statute at most is vague and does not exclude an interpretation that the Board has superior authority in this area also. The statute simply requires the Board to conduct an election when it finds that "a question of representation exists." 29 U.S.C. §

159(c)(1). If the argument instead is that judicial enforcement of no-raiding agreements does not involve the potential of conflict with prior Board rulings, whereas an arbitrated determination of a jurisdictional dispute may be inconsistent with what the Board intended at the time of the original unit determination, then its validity may be conceded without conceding the validity of plaintiff's argument as a whole. There are reasons other than the potential of conflict with prior Board decisions why Congress might have decided to grant superior authority to the Board in this area, such as the special competence of the Board in labor matters.

No case has been found in which a court enforced a no-raiding agreement after the NLRB had ordered an election. The cases relied upon by plaintiff, principally Textile Workers v. United Textile Workers Union, 258 F.2d 743 (7th Cir. 1958), and Firemen & Oilers International v. Machinists International, 338 F.2d 176 (5th Cir. 1964), involved no conflict with prior Board determinations. The few courts and commentators which have considered the enforceability of no-raiding agreements after the Board has ordered an election favor deferral to the superior authority of the NLRB. See: Toy & Doll Workers, *supra*; Meltzer, The Supreme Court, Congress, and State Jurisdiction over Labor Relations II, 59 Col.L.Rev. 269, 299 (1959); Teamsters Union v. Brotherhood of Railway and Steamship Clerks, 123 U.S.App.D.C. 173, 358 F.2d 540 (1966) (parallel result under the Railway Labor Act). The observation of commentator Meltzer is persuasive (59 Col.L.Rev. at 299):

"[I]ndirect judicial control over the Board's (representation) machinery, by way of equitable enforcement of no-raiding pacts, would involve an incongruous and disrupting departure from the basic pattern of the statute. It would either bring the Board and the Courts into direct conflict in which courts, by virtue of their broad equity powers, would prevail, or it would subordinate Board action to judicial determinations in an area which demands all of the special insights and expertise imputed to the Board."

■■ To hold that a court may enforce a no-raiding agreement which has been disregarded by the NLRB in ordering an election would be wholly inconsistent with two well-established principles of labor law. First, the Board's statutory powers generally cannot be limited by private agreement. See, e. g.: Sheraton-Kauai Corp. v. N. L. R. B., 429 F.2d 1352 (9th Cir. 1970) (holding that whether new employees constitute an accretion to an existing unit cannot be stipulated by contract); 29 U.S.C. § 160(a) (providing that the NLRB's power to prevent unfair labor practices shall not be affected by private agreement or otherwise). A no-raiding agreement would constitute a practical limitation on the Board's power to the extent that it is enforced by a court after an election has been ordered. Second, Congress intended to restrict the role of the courts in representation cases. Judicial review of Board determinations in representation proceedings must be collateral to the review of other Board action, Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), and even then must originate in the Court of Appeals rather than the District Court, 29 U.S.C. § 160(e), (f). Suit brought on a no-raiding agreement seeks, in effect, District Court review of an NLRB representation decision.

■ The court therefore holds that it is without power to enforce a no-raiding agreement in cases where the NLRB has ordered an election. However, the Board's election order must be a valid exercise of its statutory authority. If the order was for some reason invalid, and if the invalidity is of such nature that the federal district court has power to vacate that order, then there is no conflict with prior NLRB action and the court's power to enforce the no-raiding agreement remains intact. That is the situation in this case.

Section 11050 of the NLRB Field Manual authorizes the Regional Director to withhold action on representation cases involving rival AFL–CIO unions in order to give the dispute-settlement procedures in the AFL–CIO no-raiding pact "a chance to operate." There is no similar sanction for deferral of representation cases involving no-raiding agreements other than that of the AFL–CIO, and the NLRB states in its memorandum in support of this motion that "normal practice in the Regional Offices is to continue processing election petitions of non-affiliates of AFL–CIO, without delay." In this case, the Teamsters is not an AFL–CIO affiliate and therefore the AFL–CIO agreement does not apply to it. Instead, the Teamsters and the IBEW executed their own no-raiding agreement. As a consequence, section 11050 of the Field Manual was not invoked to postpone action on defendant's certification petition pending voluntary adjustment by the parties.

Intervenor points out that even in cases involving the AFL–CIO pact the Board will go ahead and order an election following the operation of the adjustment mechanism if it finds that the petitioning union still desires an election. Intervenor then contends that since the dispute in this case has not been resolved by the parties they are in the same position they would have been in if the Board had deferred action pending the operation of the contract's dispute-settlement mechanism. However, as noted at the outset, the parties disagree as to whether the adjustment mechanism provided in the contract has been fully utilized. More importantly, even if the settlement mechanism has been exhausted by this point, the important issue remains whether it had been exhausted at the time the Board commenced proceedings. If not, the Board's action may have crystallized employee sentiment against the incumbent union, and it certainly shortened the time within which the incumbent might try to regain the support of disaffected workers. Therefore, if the Board proceeded with its hearings and election before the voluntary adjustment mechanism had run its course, the contention that the parties are in the same position they would have been if they were both AFL–CIO affiliates cannot be accepted.

Congress has not expressly authorized the NLRB to discriminate among certification cases involving no-raiding agreements by deferring to the voluntary adjustment mechanisms of some but not of others. Whether such discrimination is within the discretion vested in the Board by the statutory mandate to conduct an election when it finds that a question of representation exists is a matter which the Board, or the defendant, should be required to prove. "When the Board so exercises the discretion given to it by Congress, it must 'disclose the basis of its order' and 'give clear indication that it has exercised the discretion with which Congress has empowered it.'" N. L. R. B. v. Metropolitan Life Insurance Co., 380 U.S. 438, 443, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965).

If the Board is unsuccessful in showing that such discrimination is within the proper exercise of its discretion, the court has power to set aside its election order. In Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Supreme Court held that the federal courts have jurisdiction to strike down an order of the NLRB made in excess of its delegated powers and contrary to a specific prohibition in the statute. Here, although discrimination among representation cases in the manner described is not contrary to a specific prohibition in the statute, it presents a question of law and of statutory interpretation which this court is competent to decide. This distinguishes the present case from Boire v. Greyhound Corp., *supra,* in which the Supreme Court held that the doctrine of Leedom v. Kyne does not extend to cases challenging the NLRB's assessment of the facts in a representation case. The issue in *Boire* was whether the NLRB could be enjoined from conducting an

election which it had ordered on the basis of an allegedly erroneous conclusion that two employers exercised a sufficient amount of control over certain employees to be considered joint employers. The court said (376 U.S. at 481, 84 S.Ct. at 899):

"The *Kyne* exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law."

In the present case, there is no question of the application of the law to the particular facts involved. Rather, the issue is solely one of law and statutory construction; does the NLRB have power, in the application of its policy of deferring representation proceedings pending the operation of voluntary adjustment mechanisms in no-raiding agreements, to discriminate among cases on the basis of whether or not the rival unions are both members of the AFL–CIO? A negative answer to this question would empower this court to vacate the Regional Director's election order and to enforce the no-raiding agreement.

The NLRB argues that plaintiff is barred from prosecuting this action because it failed to appeal the Regional Director's order requiring an election to the full Board as provided in 29 C.F.R. 102.67(b). Plaintiff responds by arguing that the exhaustion rule is concerned with the timing of judicial review, and that this suit is not one to review an administrative order but to enforce a contract. However, as pointed out above, the practical effect of this action is to review an NLRB election order. Nevertheless, the Board's argument must fail for the reason that it is the Board's own policy which is at issue. Whatever may be the rule in cases involving the correctness of the Regional Director's assessment of the particular facts, *cf*. N. L. R. B. v. Louisiana Industries, Inc., 414 F.2d 227 (5th Cir. 1969), it is clear that the appropriate forum for determining the legality of NLRB policy is the federal court.

Accordingly, it is ordered that Intervenor's motion to dismiss, or alternatively for summary judgment, is denied.

## ON MOTION TO RECONSIDER

This case comes before the court on intervenor's motion to reconsider that portion of the court's order of January 4, 1973, holding that the court has power to set aside the Regional Director's election order if the Board exceeded its statutory authority. The other aspect of the court's previous order, holding that the court is without power to enforce the no-raiding agreement if the election order is valid, is not contested.

The court has considered the briefs filed by counsel in response to the order re intended ruling entered March 19, 1973, and pursuant to Court Rules 5(C)(1) and 35(F), the issues raised by intervenor's motion will be determined without further oral argument.

The National Labor Relations Board (NLRB) contended in support of its original motion to dismiss, that plaintiff's failure to appeal the Regional Director's order to the full Board is a bar to this action. The court held that such an appeal was not necessary since the Board's own policy is at issue. However, the court did not discuss the effect of United States v. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952), an action to set aside an order of the Interstate Commerce Commission.

The United States Supreme Court held in *Tucker* that the plaintiff's failure to object to irregularities in the appointment of a hearing examiner during the administrative proceedings foreclosed it from asserting that objection before the United States District Court, even though the Interstate Commerce Commission had an established policy contrary to the ground of the objection. The court stated (344 U.S. at 37, 73 S.Ct. at 69):

"It is urged in this case that the Commission had a predetermined policy

on this subject which would have required it to overrule the objection if made. While this may well be true, the Commission is obliged to deal with a large number of cases. Repetition of the objection in them might lead to a change of policy, or, if it did not, the Commission would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence. Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." (Footnote omitted.)

■ It is possible, of course, to distinguish *Tucker* from the present case in certain respects. For example, *Tucker* involved a failure to object, whereas plaintiff herein requested deferral at the first hearing. Also, the nature of the alleged error in the present case is arguably more fundamental and less of a detail than that involved in *Tucker*. However, it is clear beyond doubt that the Supreme Court intended to require objections to any agency's policy to be fully aired before the agency itself before resorting to the courts.

■ This conclusion is reinforced in the present case by the fact that the NLRB has not yet had occasion to hear the objection of discrimination in deferral policies raised by plaintiff herein. On February 16, 1973, after the Court had ruled upon intervenor's first motion to dismiss, intervenor filed answers to plaintiff's interrogatories. The following statement appears in answer to Interrogatory No. 2:

"The Board has not yet had occasion to formulate a policy with respect to delaying action pending settlement efforts under no-raiding agreements other than the AFL-CIO pact because so far as the Executive Secretary is aware, no request for review has been filed challenging a regional director's refusal to delay in such a case, nor has any general request to establish such a policy been made to the Board otherwise."

The rationale of *Tucker*—that repetition of objection might lead to a change of policy—applies even more strongly to cases like this one where the objection is a matter of first impression.

The court holds that plaintiff's failure to appeal to the full Board is a bar to this court's jurisdiction. *See also*: LaPlant v. McCulloch, 382 F.2d 374 (3d Cir. 1967); Potter v. Castle Construction Company, 355 F.2d 212 (5th Cir. 1966). *Compare* Marsh v. County School Board, 305 F.2d 94 (4th Cir. 1962).

Accordingly, it is ordered:

1. Intervenor's motion to dismiss is granted as to prayers for relief numbered one (1) and two (2) in plaintiff's complaint, which seek specific enforcement of the no-raiding agreement.

2. Decision is reserved on the motions to dismiss as to the third and fourth prayers for relief, which seek monetary damages and other appropriate relief.

3. The temporary restraining order issued May 5, 1972, is dissolved.

4. Plaintiff's corrected brief in opposition to proposed order lodged March 30, 1973, may now be filed by the Clerk.

5. Decision on all other pending motions is reserved.