LOCAL #1547, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, an unincorporated Labor Association, Plaintiff,

v.

LOCAL #959, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS, INDEPENDENT, Defendant,

and

the National Labor Relations Board, Intervenor.

Civ. No. A–64–72.

United States District Court, D. Alaska.

June 20, 1973.

Robert M. Goldberg, Anchorage, Alaska, for plaintiff.

B. G. Johnson of Johnson, Tobey & Kissane, Anchorage, Alaska, George H. Davies of Vance, Davies & Roberts, Seattle, Wash., for defendant.

Glen M. Bendixsen, Chief of Sp. Litigation, NLRB, Washington, D. C., for intervenor.

## MEMORANDUM OF DECISION AND ORDER

PLUMMER, Senior District Judge.

This case comes before the court on plaintiff's motion for summary judgment on the issue of defendant's liability for damages for breach of the no-raiding agreement between plaintiff and defendant. The court has previously held that specific enforcement of the agreement is beyond the court's jurisdiction in this case because the National Labor Relations Board chose to overlook the agreement by ordering an election. (See Memorandum of Decision and Order filed January 4, 1973, 356 F.Supp. 636. (D.C.)) Defendant and intervenor contend that damages are unavailable for the same reason.

■ Plaintiff has cited no cases in support of its motion or in reply to the opposition. Defendant and intervenor have cited a number of cases [1] which hold that damages may not be recovered

1. All of these cases trace to a dictum in Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). The issue in that case was whether the court could compel arbitration of a jurisdictional dispute between two unions which might later turn out to involve a question of representation over which the National Labor Relations Board exercises final authority. The Court held that it could, adding the dictum of concern here: "Should the Board disagree with the arbiter, by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, the Board's ruling would, of course, take precedence; and if the employer's action had been in accord with that ruling, it would not be liable for damages under § 301." 375 U.S. at 272, 84 S.Ct. at 409.

for breach of contract to assign certain work to employees represented by a particular union where the Board has determined that the employees who are presently performing the work either have been previously included within another bargaining unit, Local 7–210 v. Union Tank Car Company, 475 F.2d 194 (7th Cir. 1973),[2] or are otherwise entitled to the work. Ironworkers Local 395 v. Indiana Council of Carpenters, 347 F. Supp. 1377 (N.D.Ind.1972), ILA Local 854 v. W. L. Richeson & Sons, Inc., 280 F.Supp. 402 (E.D.La.1968). To allow the recovery of damages in the former case would contravene the Board's superior authority to determine the appropriate composition of a bargaining unit, 29 U.S.C. § 159(b), and to allow recovery in the latter case would conflict with the Board's superior authority to assign work to prevent jurisdictional strikes, 29 U.S.C. § 160(k).

■ These cases are persuasive authority for denying recovery in the case at bar. To allow recovery would contradict the Board's superior authority to conduct an election and certify the result when it determines that a question of representation exists. 29 U.S.C. § 159(c). Plaintiff argues that the "damages action does not qualify the Board's decision to order an election." In an abstract or theoretical sense, this is true. An award of damages would not amount to judicial review of a Board representation order or a direct restriction on the Board's authority, which were the bases of the court's previous denial of specific performance. However, both in the cases cited above and in the case at hand, the Board has refused to give effect to the contract in carrying out its statutory responsibilities. The courts follow suit, not because the distinction drawn between legal and equitable relief is unwarranted in law, but out of deference to the superior authority of the National Labor Relations Board in delicate questions of collective bargaining representation.

Plaintiff has urged that damages are recoverable at least for the period between the breach and the Board's involvement. During this period, of course, there was no conflict between the contract and a Board order. Intervenor does not contend that the order reaches back and validates prior breaches of contract. Rather, intervenor argues in effect that there was a conflict with the statute itself. The argument is that a rule allowing the recovery of damages caused by breaches during this early period would operate as a deterrent to a non-incumbent party wishing to invoke the Board's election processes, which by statute have been made available notwithstanding the no-raiding agreement. In support of this argument, intervenor cites cases holding that it is unlawful for a union to fine a member for filing an unfair labor practice charge with the Board before exhausting his intra-union remedies, NLRB v. Marine Workers, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968), or for filing a decertification petition with the Board in alleged violation of the union constitution prohibiting members from undermining or injuring the interests of the union, NLRB v. International Molders Local 125, 442 F.2d 92 (7th Cir. 1971).

Again, these cases are compelling authority for denying recovery in the present case. The specter of damage liability is a deterrent to the breach of any contract. However, it might be argued that the particular breach to be protected from deterrence in raiding cases is the filing of the petition for election and, therefore, that damages should be recoverable for breaches occurring prior to the petition (e. g. the solicitation of authorization cards) because such potential liability would in fact motivate the early filing of the pe-

2. *See also* Smith Steel Workers v. A. O. Smith Corp., 420 F.2d 1 (7th Cir. 1969), and Teamsters Local 542 v. Ace Enterprises, Inc., 332 F.Supp. 36 (S.D.Cal. 1971), denying equitable relief under similar circumstances.

tition. Nevertheless, as a matter of fact, the petition usually cannot be filed until sometime after a raid begins, so that to invoke the Board's election processes necessarily would entail exposure to some liability. The reason for this delay lies in usual need to solicit authorization cards from the employees involved. 29 C.F.R. § 101.17 provides in part:

> "If a petition is filed by a labor organization seeking certification, or in the case of a petition to decertify a certified or recognized bargaining agent, the petitioner must supply, within 48 hours after filing but in no event later than the last day on which the petition might timely be filed, evidence of representation. Such evidence is usually in the form of cards, which must be dated, authorizing the labor organization to represent the employees or authorizing the petitioner to file a decertification proceeding."

Thus, the deterrent effect of the nearly inevitable exposure to damage liability requires the court to hold that damages may not be recovered for the breach of a no-raiding agreement occurring prior to the filing of the petition.[3]

Therefore, in deference to the superior authority of the Board in representation matters, recovery is barred for damages caused by breaches occurring after the election order, and, in order to avoid discouraging the utilization of the statutory representation machinery, re-

covery is also barred for damages caused by breaches occurring prior to the filing of the petition. Neither of these rationales, however, directly compels the denial of recovery for damages caused by breaches occurring during the period between the filing of the petition and the Board's decision thereon; there is no Board order to respect, and the representation processes have been invoked. Nevertheless, allowing damage recovery would encourage withdrawal of the petition.[4] Also, identifying just which damages are caused by breaches occurring during this interim period often would be an impossible task. The court holds that recovery is also barred for damages caused by breaches occurring between the petition and the order.

The court's conclusion is supported by the apparent absence of any reported case in which a court awarded damages for breach of a no-raiding agreement. Compare Textile Workers v. United Textile Workers Union, 258 F.2d 743 (7th Cir. 1958), and Firemen & Oilers International v. Machinists International, 338 F.2d 176 (5th Cir. 1964), enforcing arbitral cease-and-desist orders based upon no-raiding agreements.[5]

Therefore, not only should plaintiff's motion for summary judgment be denied, but also it appears that defendant and intervenor are entitled to summary judgment on the third and fourth prayers for relief in the complaint. Decision as to these last two prayers was reserved in the court's order of April 9,

---

3. If the petition had been denied, subsequent breaches (if any) might arguably be exempted from damage liability for the same reason; i. e., they might be regarded as preparation for a second attempt at obtaining a change of certification. Such an argument is not necessarily rendered less tenable by the statute barring more than one election within a twelve-month period, 29 U.S.C. § 159 (c) (3); breaches are just less likely. However, this issue is not presently before the court, because the petition was granted, and the court expresses no opinion on the matter.

4. The Board's reluctance to permit withdrawal is further support for the court's view that full utilization of the repre-

sentation process should not be discouraged. *See* Personal Products Corp., 122 NLRB 563 (1958).

5. *Firemen & Oilers* did not involve a conflicting Board order. *Textile Workers* did, but the case was decided without reference to this conflict of authority and has been criticized as a result. *See* Meltzer, The Supreme Court, Congress, and State Jurisdiction over Labor Relations II, 59 Col.L.Rev. 269, 296–297 (1959). In neither case was the contention made, apparently, that the potential of contempt enforcement of a resulting court order would deter full recourse to the Board's representation processes. This issue is not presented in the present case.

1973, dismissing the prayers for specific performance.

Accordingly, it is ordered:

1. Plaintiff's motion for summary judgment is denied.

2. Intervenor's motion to dismiss or alternatively for summary judgment is granted as to the third and fourth prayers for relief.

3. All other pending motions appear to be moot and are therefore denied without prejudice.

4. Within thirty (30) days from the date of this order:

a. Any party who objects to the entry of judgment in this case at this time because a partial appeal has already been taken or for any other reason, shall serve and file a statement of his objection and the full reason therefor.

b. Intervenor and defendant, jointly or separately, shall submit a proposed form of judgment for the court's consideration. (See also Court Rule 21(C) (2).)

c. Any party whose motion is denied without prejudice pursuant to paragraph (3) above, who objects to such denial, or any party desiring to raise any other matter, shall make or renew his motion according to Court Rule 5.