NEW ENGLAND HEALTH CARE
EMPLOYEES UNION, DISTRICT
1199, Plaintiff,

v.

SERVICE EMPLOYEES INTER-
NATIONAL UNION, AFL–
CIO, CLC, Defendant.

Civil No. 3:95CV01706 (PCD).

United States District Court,
D. Connecticut.

Aug. 22, 1996.

John M. Creane, Michael E. Passero, Law Offices of John M. Creane, Milford, CT, for Plaintiff.

Larry Engelstein, Service Employees International Union, AFL-CIO, Washington, DC, Barbara J. Collins, Hartford, CT, for Defendant.

## RULING ON PENDING MOTIONS

DORSEY, Chief Judge.

Plaintiff New England Health Care Employees Union, District 1199 ("District 1199" or "1199") has been affiliated with defendant Service Employees International Union ("SEIU"), an AFL-CIO-affiliated union of non-profit and government employees. A dispute between District 1199 and the United Food and Commercial Workers Union ("UFCW"), another AFL-CIO-affiliated union, resulted in an arbitration award which 1199 moves to vacate and SEIU moves to confirm.

## I.  BACKGROUND

During the summer of 1992, District 1199 and UFCW Local 348–S simultaneously conducted organizing drives at Care Manor nursing home in Farmington, Connecticut. In the midst of these campaigns, the nursing home voluntarily recognized the UFCW local as its employees' exclusive bargaining representative. At about the same time, District 1199 filed a petition with the National Labor Relations Board ("NLRB") for an election in which the Care Manor employees could decide which union they wished to have represent them. *See* 29 U.S.C. § 159(c)(1) (1994).

The UFCW then asked the AFL–CIO to determine whether it or 1199 should organize the Care Manor employees. Article XXI of the AFL–CIO constitution establishes a procedure for resolving organizing disputes that "may be detrimental to the best interest of the workers involved and the trade union movement...." The NLRB deferred pro-

cessing 1199's election petition pending the outcome of the AFL–CIO proceeding.

AFL–CIO umpire Glen Watts found that there was no need to resolve the unions' conflict because Care Manor had recognized the UFCW local. Watts noted, however, that relief would be proper if the NLRB jeopardized the UFCW's recognition by directing an election pursuant to 1199's petition.

The NLRB later directed an election after determining that Care Manor's recognition of the UFCW local did not bar 1199's petition. The AFL–CIO then reopened the Article XXI proceeding, and Watts awarded the UFCW the exclusive right to organize the Care Manor employees.

Despite this determination, 1199 did not withdraw its election petition or cease organizing at Care Manor. In the NLRB-supervised election, 1199 received 59 out of 60 votes. The NLRB certified 1199 as the employees' exclusive representative, and 1199 negotiated a three-year collective bargaining agreement with Care Manor.

The UFCW demanded that SEIU sanction 1199, and the AFL–CIO decided that SEIU would have to impose sanctions in order to comply with Watts' decision. SEIU initiated internal disciplinary proceedings, in which 1199 refused to participate, and fined 1199 $77,520.

District 1199 filed unfair labor practice charges with the NLRB, alleging that the disciplinary hearing violated section 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A). NLRB Regional Director Peter B. Hoffman dismissed these charges, and 1199's appeal was denied by the NLRB General Counsel.

After District 1199 refused to pay the $77,520 fine, SEIU filed for arbitration, pursuant to Article 12 of the parties' affiliation agreement. The arbitrator affirmed SEIU's actions and ordered 1199 to pay the fine. In this suit, 1199 moves to vacate the arbitration award, and SEIU moves to confirm it.

## II. DISCUSSION

District 1199 contends that the arbitration award violates public policy and should not be enforced. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 42, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987). Its argument is as follows: An objective of federal labor law is to allow employees to "designat[e] ... representatives of their own choosing ...." 29 U.S.C. § 151. Employees may express their preferences in NLRB-supervised elections, which unions can petition for and participate in. *See* 29 U.S.C. § 159(c)(1). The NLRB has authority to certify the results of such elections. *See id.* The NLRB certified 1199 as the Care Manor representative based on the 59–to–1 vote in the election that the union petitioned for. SEIU then imposed the $77,520 fine to force 1199 out of Care Manor and clear the field for the UFCW local. In doing so, SEIU violated the Care Manor employees' right to choose their representative, retaliated against 1199 for its lawful election petition and participation, and usurped the NLRB's authority to decide representation issues. By enforcing the fine, the arbitrator countenanced SEIU's actions and violated public policy.

The NLRB rejected the foregoing argument when it refused to issue a complaint of unfair labor practices against SEIU. NLRB Regional Director Peter B. Hoffman decided that SEIU was not seeking to foist upon the Care Manor employees a union they had not chosen:

> [T]he SEIU fine is not directed at compelling specific performance of the [AFL–CIO] umpire's award [of exclusive organizing rights to the UFCW local]. District 1199 stated that it could pay the fine without endangering its existence ... And there is no evidence that District 1199 intends to disclaim its representative status, rather than pay the fine.

*AFL–CIO: SEIU; UFCW,* No. 34–CB–1772 (N.L.R.B.1994) (refusal to issue compl.) at 3. Hoffman viewed SEIU's actions as just an "attempt to gain [monetary] redress for District 1199's breach of its freely given commitment to adhere to the AFL–CIO no-raid pact ...." *Id.* at 1. Such "retaliation" against 1199 did not violate federal labor law, Hoffman concluded, because there was "no[ ] ...

attempt to reverse the [NLRB] certification of District 1199." *Id.*

SEIU concedes that Hoffman's opinion does not have formal preclusive effect: "in cases involving issues of fact ... the NLRB's refusal to issue a complaint does not act as res judicata or ... collateral estoppel...." *Edna H. Pagel, Inc. v. Teamsters Local Union 595,* 667 F.2d 1275, 1279–80 (9th Cir. 1982). Nevertheless, SEIU suggests that Hoffman's views are entitled to deference because the NLRB has "primary responsibility for ... federal labor policy," *Miller v. Cal. Pac. Medical Ctr.,* 19 F.3d 449, 460 (9th Cir.1994), and special expertise in the area of representation elections, *see, e.g., Industrial Acoustics Co., S.C., Inc. v. NLRB,* 912 F.2d 717, 719 (4th Cir.1990).

■ SEIU is incorrect that Hoffman's views are entitled to deference. There are no cited or reported cases where a court considering enforcement of an arbitration award deferred to an NLRB refusal to issue a complaint. Indeed, two factors counsel against such deference. First, "[t]he NLRB's refusal to issue a complaint ends the administrative process before any adversarial process or full hearing on the merits." *Edna H. Pagel, Inc.,* 667 F.2d at 1280. This deficiency has caused NLRB refusals to be denied preclusive effect. *See Id.; see also International Union of Elec., Radio & Mach. Workers v. Gen. Elec. Co.,* 407 F.2d 253, 264 (2d Cir.1968), *cert. denied,* 395 U.S. 904, 89 S.Ct. 1742, 1746, 23 L.Ed.2d 217 (1969). It should also cause such determinations to be denied weight as precedent.

■ The second factor counseling against deference is that a court must make its own, independent determination about whether an arbitration award violates public policy. In *Botany Industries, Inc. v. New York Joint Board,* 375 F.Supp. 485, 491 (S.D.N.Y.1974), *vacated on other grounds,* 506 F.2d 1246 (2d Cir.1974), no weight was given to the arbitrator's assumption about the parties' compliance with federal labor law, even though arbitrators, like the NLRB, are " 'part of [the workplace] system of [ ] goverment ...'.... [and have] knowledge of the common law of the shop...." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363

U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) (citation omitted). Therefore, SEIU's reliance on the NLRB's responsibility and expertise is not persuasive.

■ Stripped of the benefit of deference, Hoffman's views cannot be endorsed. Public policy was violated even though it appears the arbitration award will not force 1199 out of Care Manor. Public policy was violated merely by the imposition of damages, as suggested by *Local # 1547, International Brotherhood of Electrical Workers v. Local # 959, International Brotherhood of Teamsters,* 507 F.2d 872 (9th Cir.1974). *Local # 1547* considered the propriety of awarding damages for breach of a no-raid agreement. *See id.* at 878–79. The present case does not involve breach of a no-raid agreement, but there is a sufficient analogy between such a breach and 1199's disregard of the exclusive organizing rights awarded to the UFCW local.

In *Local # 1547,* the court concluded:

We do not wish to establish a precedent which renders worthless all written no-raid agreements, historically important to labor-relations stability. There may be cases in which bad faith or predatory organizing practices are so patently offensive to the orderly resolution of interunion competition that recourse to damages should be available as a contractual remedy. On the other hand, if the "raid" occurs at the invitation of the raided union's members, an award of damages may well have a chilling effect on [employees' exercise of their right to choose their representatives], and would be inappropriate. The facts in each case should control.

*Id.*

The facts in this case suggest that damages are inappropriate. SEIU has not disputed that 1199 entered Care Manor at the employees' invitation. SEIU has even conceded that 1199's organizing was "not a bad faith or predatory type of raid": when 1199's attorney said so during the arbitration hearing, SEIU's counsel replied: "We'll stipulate to that ... We agree. We agree. [1199] had every right to try to organize [Care

Manor]. We didn't view it as predatory ...." Tr. at 148.

Given this situation, enforcement of the arbitration award would be improper. It would penalize the Care Manor employees for expressing interest in 1199. Their union representative would be deprived of funds that could otherwise be used for their benefit.

### III. CONCLUSION

For the foregoing reasons, District 1199 and SEIU's motions are, respectively, granted (doc. 1–1) and denied (doc. 5–1). The arbitration award is vacated. The clerk shall enter judgment and close the file.

SO ORDERED.