**Jean Lorelle BURKE, Plaintiff–Appellant,**

v.

**Robert E. JACOBY, Defendant–Appellee.**

**No. 1063, Docket 91–9148.**

United States Court of Appeals, Second Circuit.

Argued March 4, 1992.

Decided Dec. 29, 1992.

questions during his deposition, yet received only a 24–month suspension).

Richard M. Meyer, New York City (Lee S. Shalov, Milberg Weiss Bershad Specthrie & Lerach, on the brief), for plaintiff-appellant.

John Hartje, New York City (A. Kaiper Wilson, Robert S. Shwarts, Kronish, Lieb, Weiner & Hellman, on the brief), for defendant-appellee.

Before KEARSE and ALTIMARI, Circuit Judges, and TELESCA, Chief Judge *.

KEARSE, Circuit Judge:

Plaintiff Jean Lorelle Burke, a former employee and stockholder of Ted Bates Worldwide, Inc. ("Bates" or the "Company"), appeals from a final judgment of the United States District Court for the Southern District of New York, Miriam Goldman Cedarbaum, *Judge*, dismissing her complaint for damages against defendant Robert E. Jacoby under § 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b) (1988), Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1992), and state law, alleging misrepresentations, omissions, breach of contract, and breaches of fiduciary duty in connection with the acquisition of Bates by another company. The district court granted summary judgment dismissing the complaint principally on the grounds (1) that certain of the alleged omissions concerned facts already known by Burke, (2) that Burke failed to come forward with evidence that she had relied on the alleged misrepresentations or omissions or that they had caused her claimed loss, and (3) that certain of her claims were barred by the statute of limitations. On appeal, Burke contends, *inter alia*, that the district court applied erroneous legal standards of reliance and causation in assessing her federal securities claims and that partial summary judgment should have been entered in her favor on the breach-of-contract claim. She also argues that the district court's statute-of-limitations ruling with respect to one of the federal securities claims must be set aside in light of a recent amendment to the 1934 Act. For the reasons below, we reject her contentions and affirm the judgment of the district court.

## I. BACKGROUND

### A. *The Bates–Saatchi Merger*

Prior to August 1986, Bates was an employee-owned advertising company. Jacoby was its president, chairman, and chief executive officer, as well as its controlling

stockholder. Bates had two classes of stock. Class A was issued to key executives of the Company. A "Stockholders Agreement" limited the transferability of such stock, permitting its resale only to the Company, or to designated employees, at a price calculated principally by dividing the Company's net asset value by the number of Class A shares outstanding. Burke owned 700 shares of the Class A stock. Jacoby owned 27,750 Class A shares; in addition, as authorized by a shareholder resolution adopted in 1982, he had options covering 80,000 Class A shares.

All of the Bates Class B stock, of which there were 30,000 shares, was owned by Jacoby. The Stockholders Agreement also restricted transfer of the Class B stock, the repurchase price of which was fixed at $.50 per share. Under the certificate of incorporation, each Class A share, of which fewer than 500,000 were outstanding, had one vote; each of the 30,000 Class B shares had 50 votes. Thus, Jacoby, with more than 1,500,000 votes, had voting control of the Company.

In August 1986, Bates was acquired by Saatchi & Saatchi Company, PLC ("Saatchi"). The Acquisition Agreement, approved by the Bates stockholders in May 1986, principally (1) required Bates prior to the closing (a) to redeem 22,788 Class A shares for $17.4 million, and (b) to redeem Jacoby's 30,000 Class B shares for $40 million; (2) allowed Bates prior to the closing to sell some 30,000 Class A shares to approximately 20 employees; and (3) required Saatchi to pay a total of $450 million in cash to persons who, at the time of the closing, held Class A shares or options. Each holder of Class A stock was to receive $765.3953 per share upon completion of the acquisition, plus $87.6286 per share two years later, for a total of approximately $853 per share. Holders of stock options were to receive the same price per share, minus the exercise price of the option. The Acquisition Agreement also provided appraisal rights for stockholders who dissented.

At the May 1986 stockholders' meeting, Jacoby spelled out the above terms, noting that, absent the acquisition, the book value of the Class A stock at the end of the fiscal year would be $390 per share. When he announced the acquisition price of approximately $853 per Class A share, the stockholders, including Burke, applauded. As to the Class B stock repurchase, Jacoby stated, "We have had a separate outside investigation by a respected investment banking house, Lazard Freres, and they have stated that the price to be paid for Class B shares which will be redeemed at or prior to closing for $40,000,000 is a fair one." The shareholders, including Burke, approved the proposed Saatchi transaction. They also unanimously approved a resolution terminating the Stockholders Agreement, effective upon consummation of the acquisition.

Pursuant to the Acquisition Agreement, Jacoby received a total of $112.6 million, consisting of the $40 million for his 30,000 Class B shares, $23.6 million for his 27,750 Class A shares, and $49 million for his Class A stock options. For her 700 shares, Burke received the per-share amounts specified by Jacoby in the May 1986 stockholders' meeting presentation. In her letter transmitting her stock to Saatchi, Burke acknowledged that the Stockholders Agreement restricting transferability of the stock was rescinded concurrently with the consummation of the acquisition.

### B. *The Present Lawsuit*

In March 1989, Burke commenced the present action for damages, alleging that Jacoby had misrepresented or failed to disclose certain material facts in connection with the Saatchi acquisition. The complaint alleged principally (a) that Jacoby had failed to disclose in 1982 that he would receive options on the Class A shares; (b) that Jacoby had failed to disclose in May 1986 that, while negotiating with Saatchi, Bates had received a competing offer that Jacoby summarily rejected; (c) that Jacoby had failed to disclose in May 1986 how many Class A stock options he held; and (d) that Jacoby had misrepresented the investment banker's opinion of the price for the Class B shares, stating that the banker had termed the price "fair," when in fact

the banker had said that the price was "reasonable." The complaint also alleged, *inter alia*, that Jacoby breached his fiduciary duty (a) by accepting $40 million for his 30,000 Class B shares as, in essence, a "control premium," and (b) by having Bates sell a total of 3,500 Class A shares to two employees who were not executives but secretaries. Burke sought damages and an "accounting" of Jacoby's profits from the Saatchi transaction.

Following a period of discovery, Burke moved for partial summary judgment principally on the ground that Jacoby's receipt of $40 million for his Class B shares breached the Stockholders Agreement. Jacoby cross-moved for summary judgment dismissing the entire complaint on the grounds, *inter alia*, that Burke could not show that any of the alleged misrepresentations or omissions had been relied on or had caused her injury, and that she was not entitled to damages on any of her state-law claims.

After receiving voluminous papers and hearing oral argument, and after inviting and receiving a postargument affidavit from Burke, the district court granted Jacoby's motion for summary judgment and denied Burke's motion. In a Memorandum Opinion and Order dated October 10, 1991, 1991 WL 221417 ("Opinion"), the court ruled that insofar as Burke's securities claims rested on events that occurred in 1982, they were barred by the one year/three year statute of limitations adopted in *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir.1990) (one year from discovery, but not more than three years from occurrence), and *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (same), and made retroactive by *James B. Beam Distilling Co. v. Georgia*, — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). As set forth below, the court dismissed the remaining securities claims on the ground that Burke had not come forward with evidence of reliance or causation, noting that Burke "does not assert that she would have voted against the merger even if she had been aware of the extent of [Jacoby]'s self-dealing, and even

now, she does not wish to undo the merger." Opinion at 2.

As to the claim based on Jacoby's statement that the investment banker had said that $40 million was a "fair," instead of a "reasonable," price for the Class B stock, the court stated that Burke failed to show that the "misrepresentation complained of was at least a 'but for' cause of the transaction in question," Opinion at 12, and that there was "no evidence of loss causation," noting as follows:

> At the oral argument of this motion, I invited Burke's counsel to submit evidence, in the form of an affidavit from Burke, that she relied upon Jacoby's description of Lazard's opinion in deciding to sell her shares. (*See* Hearing Tr. at 19–20.) In response, Burke submitted an affidavit stating only: "Had I known of the falsity of that representation, I would have objected to the allocation of the proceeds of the merger on the terms then set forth." She does not state that she would have dissented from the merger. Thus, since there is no evidence of loss causation, an essential element of a claim of fraud in connection with the purchase or sale of securities, Jacoby's motion for summary judgment on this part of the Section 10(b) claim is granted.

Opinion at 12. As to the claimed omissions, the court observed that Burke

> has never stated that she would have voted against the merger even if she had been apprised of Jacoby's option holdings or potential profit on them, despite my invitation for her to do so. (*See* Hearing Tr. at 19–20; Burke Aff.) On the contrary, she has maintained the position that the total sale price was an "excellent" one (P.Mem. in Opp'n to Summ.J. at 1) and that she is not " 'dissenting from' " the merger (*id.* at 54).

Opinion at 14–15; *see id.* at 17 (as to the third-party offer to buy the Bates stock, "[a]gain ... plaintiff has made no showing that she would have voted against the merger had she been in possession of the information" and hence "has failed to make the requisite showing of loss causation"). The court noted that a § 10(b) plaintiff

"must establish that the misrepresentations complained of caused the injury suffered," Opinion at 15, and concluded that

although there may be a genuine issue of material fact as to whether the omission plaintiff complains of was material and misleading, there is no evidence that it affected her vote or her desire to sell her shares. Thus, the misrepresentation cannot be said to have caused the alleged injury.

*Id.*

The court also ruled, *inter alia,* that since Burke disavowed any desire to rescind the transaction, not wishing to forgo what she had received in the transaction, she was not entitled to challenge that part of the transaction that resulted in the payment to Jacoby for his Class B shares.

Judgment was entered dismissing the complaint, and this appeal followed.

## II. DISCUSSION

On appeal, Burke, stating that "[p]laintiff approves of the merger and the price which Saatchi paid for the Company" (Burke brief on appeal at 39 n. 16), pursues her attempt to have much of the payment received by Jacoby redistributed to other Class A stockholders. She contends principally that, in light of an amendment to the 1934 Act, her securities claim based on the 1982 stock options is not barred by the statute of limitations; that the district court applied erroneous legal standards of reliance and causation to her other federal securities claims; that the court erred in ruling that statutory appraisal was her only remedy for the claim that Jacoby breached his fiduciary duty to Bates shareholders by receiving $40 million for his 30,000 Class B shares; and that the court erred in not ruling that as a matter of law the $40 million payment to Jacoby for his Class B shares breached the Stockholders Agreement. For the reasons below, we find no basis for reversal.

### A. *The Statute of Limitations on the 1982 Nondisclosure Claim*

■ Burke contends that notwithstanding the one year/three year limitations period for claims under Rule 10b–5 established by *Ceres Partners v. GEL Associates,* 918 F.2d 349 ("*Ceres*"), and *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321, and the ruling in *James B. Beam Distilling Co. v. Georgia,* — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481, requiring that the one year/three year rule be applied retroactively, her claims based on 1982 events have been revived by the recently enacted § 27A of the 1934 Act, 15 U.S.C.A. § 78aa–1 (West Supp.1992), which modifies the retroactivity of the one year/three year rule. Her reliance on § 27A is misplaced.

Section 27A(b) provides that the limitation period for a claim under § 10(b) or Rule 10b–5

commenced on or before June 19, 1991— (1) which was dismissed as time barred subsequent to June 19, 1991, *and (2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction,* including principles of retroactivity, as such laws existed on June 19, 1991, shall be reinstated on motion by the plaintiff.

15 U.S.C.A. § 78aa–1(b) (West Supp.1992) (emphasis added). As indicated by the language emphasized, this section does not authorize reinstatement of a claim that would have been time-barred under the principles applicable on June 19, 1991. Leaving aside the question of whether, in light of § 27A(b), the *Ceres* rule, adopted by this Court prior to June 19, 1991, is to have retroactive application to claims filed prior to the *Ceres* decision, *see Henley v. Slone,* 961 F.2d 23, 25–26 (2d Cir.1992), that section affords Burke no relief, for her claim was time-barred even under pre-*Ceres* precedent. *See generally Grondahl v. Merritt & Harris, Inc.,* 964 F.2d 1290, 1292–93 (2d Cir.1992) (no need to analyze applicability of *Ceres* if claim would also have been barred under pre-*Ceres* rule).

Prior to *Ceres,* a Rule 10b–5 action that accrued in New York and was brought in a district court within New York was time-barred in this Circuit if not brought "within six years from the time the cause of action

accrued or within two years from the time the wrongdoing was, or with reasonable diligence should have been, discovered." *Armstrong v. McAlpin,* 699 F.2d 79, 87 (2d Cir.1983); *see also Stull v. Bayard,* 561 F.2d 429, 431–32 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978). Here Jacoby's allegedly wrongful acquisition of stock options occurred in May 1982. The issuance of such options was approved at the 1982 annual meeting of stockholders, and Jacoby disclosed at that meeting that he was one of the employees who would receive options pursuant to the plan. Though Burke claims that she did not know in 1986 how many options Jacoby held, she does not dispute that she knew in 1982 that the stock option plan had been approved by the stockholders and that she knew in 1982 that Jacoby had been awarded options. The claim in the present action that Jacoby violated the securities laws in 1982 by not informing stockholders prior to their approval of the stock option plan that he intended to award himself 80,000 shares was not asserted until 1989, more than six years after the options were issued and more than six years after Burke knew that some options had been awarded. Thus Burke's claim would have been untimely even prior to the adoption of the one year/three year limitations period in *Ceres.* Accordingly, even if *Ceres* were not to be applied retroactively to claims pending at the time of its decision, § 27A(b) does not authorize reinstatement of Burke's claim.

Burke's contention that even the six-year limitations period should not bar her claim because of principles of equitable estoppel has no merit. The record plainly reveals that Burke had sufficient facts to inquire, if she had been interested, into precisely how many shares were optioned to Jacoby, and she has come forward with no evidence of any form of concealment on the part of Jacoby.

## B. *Reliance and Causation*

In her challenge to the dismissal of the remaining securities claims, Burke contends that the district court, in finding dispositive her failure to show that she would have dissented from the acquisition had she had full knowledge of the facts, applied erroneous standards of reliance and causation. Even if we interpreted the district court's opinion as imposing an improper standard of reliance with respect to Burke's claims of misleading omissions, the court's standard of causation was clearly proper, and hence we see no basis for reversal.

■ Rule 10b–5 makes it unlawful, in pertinent part, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, ... in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5. In order to prove a claim under § 10(b) or Rule 10b–5, a plaintiff must show, *inter alia,* that the defendant, with scienter, made a misrepresentation of material fact or failed to disclose a material fact, and that the plaintiff relied on the misrepresentation or omission and suffered a loss as a result of the misrepresentation or omission. *See, e.g., Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985). The reliance element of the claim is sometimes referred to as "transaction causation," and the causation element is sometimes referred to as "loss causation." *See, e.g., Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.,* 967 F.2d 742, 747 (2d Cir.1992); *Bennett v. United States Trust Co.,* 770 F.2d 308, 313 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). The two concepts are closely allied, for there generally is no causation without reliance. There can, however, be reliance without causation.

■ A plaintiff's burden with respect to the reliance element of a Rule 10b–5 claim may vary depending on whether the claim alleges fraudulent representations or fraudulent omissions. In connection with a claim that the defendant has affirmatively made false statements, plaintiff must demonstrate that he or she relied on the misrepresentation when entering the transaction that caused him or her economic harm.

*See, e.g., Wilson v. Ruffa & Hanover, P.C.,* 844 F.2d 81, 86 (2d Cir.1988), *aff'd on reh'g sub nom. Wilson v. Saintine Exploration & Drilling Corp.,* 872 F.2d 1124 (2d Cir. 1989); *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 380 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). In connection with a claim of material omission, however, "positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *see also duPont v. Brady,* 828 F.2d 75, 78 (2d Cir.1987) (" 'in instances of total nondisclosure, ... it is of course impossible to demonstrate reliance' ") (quoting *Titan Group, Inc. v. Faggen,* 513 F.2d 234, 239 (2d Cir.), *cert. denied,* 423 U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975)). Thus, "once the plaintiff establishes the materiality of the omission by a preponderance of the evidence, the burden shifts to the defendant to establish also by a preponderance of the evidence that the plaintiff did not rely on the omission in making the investment decision." *duPont v. Brady,* 828 F.2d at 76; *see also Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.,* 967 F.2d at 748.

■ Summary judgment should be granted only if there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). In order to obtain that relief, the moving party need not prove that his opponent's case is wholly frivolous. When a defendant has moved for summary judgment on the ground that undisputed facts reveal that the plaintiff cannot establish an essential element of the claim, on which element the plaintiff has the burden of proof, and the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on that element, summary judgment should be granted. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

If the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) (per curiam).

■ In the present case, there may be, as the district court noted, questions of fact as to whether the alleged omissions were material, or whether the description of the Lazard Frères opinion was a material misrepresentation, in the sense that reasonable stockholders might have considered the accurate information important to their decisions as to whether or not to vote for the acquisition. And it may be, as to the claims of omissions, that the undisclosed information was material, thereby prima facie establishing reliance. But these questions of materiality and reliance are not issues of material fact in the context of the summary judgment granted in the present case because, as we read the district court's opinion, the court dismissed Burke's federal securities claims—whether based on affirmative misrepresentation or omission—for lack of proof of loss causation. *See* Opinion at 12, 15, 17.

The record supports the district court's view that Burke had come forward with no evidence that the claimed misrepresentations or omissions caused her any injury, for she concedes that, whatever importance she might have placed on the undisclosed information, she would not have performed the act that was necessary to obtain a better price for her shares than she received, *i.e.,* dissent from the merger, either to impede its consummation or to obtain an appraisal of her shares. Burke had every opportunity in this litigation to state, if she could do so in good faith, that she would have dissented from the acquisition if she had known the facts she contends were misrepresented or concealed. In addition

to the ordinary opportunity to present her case in opposition to Jacoby's motion for summary judgment, she was invited by the court at oral argument to represent, under oath, if she could do so in good faith, that she would not have sold her shares. In response, Burke's affidavit stated that she would have objected to "the allocation of the proceeds of the merger"; but she did not state that she would have dissented, which would have required her to forgo the large profit to be had on her own shares. At no point did Burke suggest that she would have voted against the acquisition had she known any or all of the facts she claims were not disclosed to her. In the district court, she termed the purchase price "in all respects fair and adequate" (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 54); and in this Court, as noted above, she stated that she still approves of the merger.

The record thus contains no evidence whatever from which a reasonable juror could conclude that any of the alleged misrepresentations or omissions caused Burke any loss. Accordingly, the district court properly dismissed the timely asserted securities claims for lack of evidence of causation.

## C. *The Challenge to the Payment for the Class B Shares*

Burke contends that the district court erred in ruling that her remedies for the claim that Jacoby breached his fiduciary duty to Bates shareholders by accepting $40 million for his 30,000 Class B shares were limited to her statutory appraisal right or equitable relief. We disagree.

■ In ruling that Burke was limited to her appraisal rights, the district court relied on § 623(k) of the New York Business Corporation Law, which provided that

[t]he enforcement by a shareholder of his right to receive payment for his shares in the manner provided herein [*i.e.*, by an appraisal proceeding] shall exclude the enforcement by such shareholder of any other right to which he might otherwise be entitled by virtue of share ownership,

. . . except that this section shall not exclude the right of such shareholder to bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is unlawful or fraudulent as to him.

New York Bus. Corp. Law § 623(k) (McKinney 1986). An "appropriate action" within the meaning of § 623(k) is an action seeking equitable relief, and that type of action and the exercise of the right of appraisal are the dissatisfied stockholder's only avenues of relief. *See Walter J. Schloss Associates v. Arkwin Industries, Inc.*, 61 N.Y.2d 700, 472 N.Y.S.2d 605, 460 N.E.2d 1090 (1984) (adopting dissenting opinion of Mangano, J., at the Appellate Division as Court of Appeals opinion), *rev'g* 90 A.D.2d 149, 455 N.Y.S.2d 844 (2d Dep't 1982) ("*Schloss*"); *Breed v. Barton*, 54 N.Y.2d 82, 444 N.Y.S.2d 609, 429 N.E.2d 128 (1981). Money damages are not available except as "ancillary to a grant of traditionally equitable relief." *Schloss*, 90 A.D.2d at 160, 455 N.Y.S.2d at 851. As the *Schloss* court explained:

An action for damages alone will not lie, since this would allow a dissenting shareholder, by merely alleging fraudulent or unlawful corporate conduct, to seek therein the identical relief available to him in appraisal proceedings. For example, where, as here, there is "a forced liquidation or sale of the minority shareholders' stock incident to a merger" . . . the full and proper monetary recovery of the fair value of the dissenters' shares may be obtained in appraisal proceedings in which the discharge of the majority's fiduciary duty to the minority can be weighed in determining fair value. . . . Consequently, an action for damages by a minority shareholder based on the fraudulent or illegal corporate conduct of the majority in discharging its fiduciary duty would be unnecessarily duplicative.

*Id.* at 161, 455 N.Y.S.2d at 851 (footnote omitted). The equitable relief to which an award of damages could be ancillary means relief other than a so-called request for an accounting that is merely a request for damages in another form. *See id.* at 162 n.

6, 455 N.Y.S.2d at 852 n. 6 ("The complaint does not seek to have defendant … account to plaintiff as representative of the premerger corporation but appears to request an accounting and payment of improperly withheld funds by [defendant] to plaintiff in its individual capacity, revealing plaintiff's real, and, in fact stated, intent, i.e., to obtain damages.").

■ Burke's complaint requested compensatory and punitive damages, together with an accounting that the district court properly viewed as essentially a request for damages. Burke made no attempt to obtain traditionally equitable relief such as a rescission of the merger. As indicated above, she took the position in the district court that the purchase price was "in all respects fair and adequate," and that she was not "dissenting" from the merger. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 54.) Her request for an "accounting," like the request in *Schloss*, was not for equitable relief from Jacoby as to funds belonging to the Company but rather sought funds he received in his individual capacity. *Schloss* forecloses that relief.

Accordingly, we affirm the district court's dismissal of Burke's state-law breach-of-fiduciary-duty claim concerning the redemption of Jacoby's Class B stock.

### D. *Other Arguments*

■ Burke's other challenges to the dismissal of her complaint do not require extended discussion. Her breach-of-contract claim, on which she contends the court should have granted summary judgment in her favor, was properly rejected as a matter of law. That claim relied on the Stockholders Agreement. The stockholders, however, in voting to approve the Saatchi acquisition, explicitly voted to rescind the Stockholders Agreement to coincide with the acquisition. Further, each Class A stockholder, including Burke, acknowledged the termination of the Stockholders Agreement in transmitting his or her Class A shares to consummate the acquisition. Since Burke has disavowed any desire to rescind or dissent from the acquisition, the Stockholders Agreement affords her no basis for a claim.

■ Burke's complaint that Class A stock was improperly issued to two of Bates's secretaries, who were not "key executive employees" entitled to such stock was also properly dismissed. A schedule attached to that Agreement listed the two secretaries and the other employees who were to receive Class A shares prior to the closing; we see no indication in the record that if any of the authorized Class A shares had not been issued to the persons listed in the schedule, they were to be issued to others such as Burke. Further, the Acquisition Agreement specified, to the hundredth of a cent, the price to be paid to stockholders for each Class A share; we see no indication that if any of the authorized shares were not issued in accordance with the schedule, the price paid for the already issued shares was to be increased. Burke presented no evidence from which an inference could be drawn that had she been notified of the sales, or had they not been made, she would have received a greater price per share. Thus, we uphold the district court's rulings that the issuance of shares to the secretaries was not material to Burke's vote on the merger, was not material to the surrender of her stock, and did not cause her any injury.

### CONCLUSION

We have considered all of Burke's arguments on this appeal and have found in them no basis for reversal. The judgment of the district court is affirmed.