Jeffrey FEINMAN and Gary Kosseff, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

DEAN WITTER REYNOLDS, INC.; Oppenheimer & Co.; Smith Barney, Inc.; Merrill Lynch & Company; Merrill Lynch Pierce Fenner & Smith Incorporated, on behalf of themselves and all others similarly situated, Defendants–Appellees.

No. 1242, Docket 95–9081.

United States Court of Appeals, Second Circuit.

Argued March 25, 1996.

Decided May 17, 1996.

Roger W. Kirby, New York City (Ira M. Press, Kaufman Malchman Kirby & Squire, New York City, on the brief), for plaintiffs-appellants.

Charles A. Gilman, New York City (Jonathan Sherman, Cahill Gordon & Reindel, New York City, on the brief), for defendants-appellees.

Before NEWMAN, Chief Judge, and FEINBERG and PARKER, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal challenges the practices of several of the nation's largest stock brokerage firms in the labeling of their fee charges in connection with securities transactions. Jeffrey Feinman and Gary Kosseff appeal from the September 30, 1995, judgment of the District Court for the Southern District of New York (Denise Cote, Judge), dismissing their suit alleging securities fraud. Appellants alleged that the firms charged hidden commissions on every transaction, mislabeling their charges as transaction fees on confirmation slips supplied to the customer. The District Court ruled as a matter of law that appellants had failed to show both materiality and reliance. We agree and therefore affirm.

## Background

After every securities transaction, stock brokers are required to provide the customer with a confirmation slip disclosing, among other things, the nature and amount of the transaction and any additional charges. *See* 17 C.F.R. § 240.10b–10 (1995) and NYSE Rule 409. Each of the defendants routinely charges a transaction fee, ranging from $2.35 to $4.85, for each purchase or sale processed. On the confirmation slips, the fees are variously identified as covering "handling, postage and insurance if any" (Dean Witter Reynolds, Inc.); "handling" (Oppenheimer & Co., Inc.); "service" (Smith Barney, Inc.); and "processing" (Merrill Lynch & Co.).

Feinman and Kosseff, who dealt with each of the defendant firms for eight years, received confirmation slips identifying transaction fees for every purchase and sale. They alleged that the fees charged far exceed the cost to the firms of such items and instead represent hidden, fixed commissions, disguised to circumvent rules prohibiting fixed rates and to prevent customers from negotiating the fees. Feinman and Kosseff sought to represent a class of similarly situated securities customers against a class of brokerage firms charging excessive transaction fees.

The District Court granted summary judgment for the defendants, ruling that deceptive labeling of the transaction fees was not material as a matter of law to the plaintiffs' decisions to purchase and sell securities and that the plaintiffs could not as a matter of law show that they relied on this mislabeling. We agree.

## Discussion

■ To bring a successful complaint for securities fraud under section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (1994), a plaintiff must allege that, "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused plaintiff injury." *In re Time Warner Inc. Securities Litigation,* 9 F.3d 259, 264 (2d Cir.1993) (quotation omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994).

### I. Materiality

Appellants contend that, correctly identified as commissions, the transaction fees would have been material to their decisions, made over the course of their eight-year dealings with the defendants, to purchase or sell securities.

In *TSC Industries, Inc. v. Northway,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), the Supreme Court, defining materiality in the proxy rules context, stated that information is material if it would have "assumed actual significance in the deliberations of the reasonable shareholder." *Id.* at 449, 96 S.Ct. at 2132. The Court later adopted this rule in the context of a securities fraud claim under section 10(b) and Rule 10b–5. *Basic Inc. v. Levinson,* 485 U.S. 224, 231, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988). The Court noted that in *TSC Industries* it had been "careful not to set too low a standard of materiality" lest it "lead management 'simply to bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking.'" *Id.* (quoting *TSC Industries,* 426 U.S. at 448–49, 96 S.Ct. at 2132). Further, where the alleged misstatements are "so obviously unimportant to a reasonable investor that reason-

able minds could not differ on the question of their importance," a court may find the misstatements immaterial as a matter of law. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985); *see also TSC Industries*, 426 U.S. at 450, 96 S.Ct. at 2133 (discussing standard for summary judgment on issue of materiality).

■ We believe the District Court properly concluded that no reasonable investor would have considered it important, in deciding whether or not to buy or sell stock, that a transaction fee of a few dollars might exceed the broker's actual handling charges.[1] Each of the defendants' confirmation slips itemized the amount of the fee; the appellants were never charged more than the amounts reported on these slips. *See Levine v. NL Industries, Inc.*, 926 F.2d 199, 203 (2d Cir. 1991) (affirming grant of summary judgment where, under defendants' indemnity agreement with Department of Energy, "there was no plausible way that NL's shareholders could suffer financially from the consequences of the alleged [undisclosed] environmental violations").

Cases in which we have refused to find that representations were not material as a matter of law have involved misstatements or omissions that did, or at least had the potential to, cause the plaintiff financial harm. *See Azrielli v. Cohen Law Offices*, 21 F.3d 512, 519 (2d Cir.1994) (alleged misrepresentation could have affected plaintiffs' share purchase price or misstated market value of corporation's only asset); *Goldman*, 754 F.2d at 1067 (undisclosed "problems" in marketing defendants' product could have affected value of stock); *cf. Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 111–12 (2d Cir.1986) (by analogy to securities law, in case under Commodities Exchange Act, commodities broker's allegedly false assurances as to account management may have led to plaintiff's investment in overly risky commodities).

Simply stated, reasonable minds could not find that an individual investing in the stock market would be affected in a decision to purchase or sell a security by knowledge that the broker was pocketing a dollar or two of the fee charged for the transaction. *Cf. Burke v. Jacoby*, 981 F.2d 1372, 1381 (2d Cir.1992) (affirming grant of summary judgment on grounds of immateriality ·where no reason to believe that issue of stock to secretaries rather than executives could have affected plaintiff's position in merger), *cert. denied*, 508 U.S. 909, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993). If brokerage firms are slightly inflating the cost of their transaction fees, the remedy is competition among the firms in the labeling and pricing of their services, not resort to the securities fraud provisions.

## II. Reliance

Appellants did not attempt to plead that the mislabeling of the fees "induced [them] to enter into the transaction[s]." *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1495 (2d Cir.1992). In most cases, reliance, also known as transaction causation, *Burke*, 981 F.2d at 1378, is an essential element of a section 10(b) and Rule 10b–5 claim. *In re Time Warner*, 9 F.3d at 264. Plaintiffs, however, principally relying on *Basic Inc. v. Levinson, supra*, argue that reliance may be presumed in any class action suit.

*Basic* does not support this contention. In that case, the Supreme Court held that reliance on material misrepresentations may be presumed in open-market transactions because such investors rely on the integrity of the market to set a fair price and in that sense rely on any misrepresentations that distort the market price. *Id.* at 241–47, 108 S.Ct. at 988–92.

■ *Basic* attempts to avoid practical problems of proof in impersonal market transactions. *Id.* at 245, 108 S.Ct. at 990–91.

---

1. Defendants also urge that plaintiffs have failed to meet the requirement of section 10(b) that the misrepresentations have occurred "in connection with" the purchase or sale of securities. *See SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1361–63 (9th Cir.1993). They argue that the charges at issue are related to the delivery of confirmation slips, not the plaintiffs' decisions to buy or sell stocks. Because we agree with the District Court's conclusion that plaintiffs have failed to satisfy the materiality and reliance elements of a section 10(b) claim, we need not decide whether the misrepresentations at issue were "in connection with" the purchase or sale of securities.

Neither *Basic* nor any other decision invoking a presumption of reliance extends this presumption to all cases alleging class-wide injury. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) (total nondisclosure of material information). This case presents no problems of proof like those in *Basic* and *Affiliated Ute* to justify a presumption of reliance. Plaintiffs do not allege that the market price for the securities was distorted or that the transaction fees were not disclosed.

Moreover, those decisions made clear that the presumption would apply only where the defendant has misrepresented or omitted a *material* fact. *Basic*, 485 U.S. at 247, 108 S.Ct. at 991–92; *Affiliated Ute*, 406 U.S. at 153–54, 92 S.Ct. at 1472. As we have discussed, mislabeling of the fees to disguise the defendants' commission or profit is not a material misrepresentation for purposes of a securities fraud claim.

### III. Leave to Amend

Finally, the District Court did not err in refusing to permit plaintiffs to replead. Denial of leave to amend is left to the broad discretion of the District Court and will be reversed only for abuse of discretion. *Zahra v. Town of Southold*, 48 F.3d 674, 685–86 (2d Cir.1995). The District Court ruled as a matter of law that no material misrepresentation was made. Such a defect cannot be cured by repleading. Denial of leave to amend in these circumstances does not approach an abuse of discretion.

### Conclusion

Plaintiffs have failed as a matter of law to show that misrepresentation of the fees was material to their securities transactions or that they relied on those misrepresentations. The judgment of the District Court is affirmed.