IDYLWOODS ASSOCIATES and
Kam, Inc., Plaintiffs,

v.

MADER CAPITAL, INC.,
et al., Defendants.

No. 91–CV–0364S.

United States District Court,
W.D. New York.

Dec. 31, 1997.

Phillips, Lytle, Hitchcock, Blaine & Huber (Robert E. Glanville, of counsel), Buffalo, NY, for Plaintiffs.

Duke, Holzman, Yaeger & Radlin (Peter G. Ruppar, of counsel), Buffalo, NY, for Mader Capital, Slate Bottom Creek Apartments, Marc Equity Partners, Trustees of Mader Profit Sharing Plan.

Periconi & Rothberg, P.C. (James J. Periconi, of counsel), New York City, for American Premier Underwriters.

Harter, Secrest & Emery (Craig A. Slater, of counsel), Buffalo, NY, for Witben Realty, Sereth Properties, Wolsher, Inc., and Universal Marion Corp.

Connors & Vilardo (Lawrence J. Vilardo, of counsel), Buffalo, NY, for Louis E. Wolfson.

Williams & Connolly (Steven M. Umin, Dane H. Butswinkas, of counsel), Washington, DC, for Louis E. Wolfson.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned by the Hon. William M. Skretny, on September 5, 1991, for determination of any non-dispositive motions. The matter is presently before the court on Defendant American Premier Underwriters, Inc.'s motion for leave to amend its cross-claims, filed August 11, 1997. (Document No. 128).

### BACKGROUND and FACTS

This action alleging claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") was originally filed on June 5, 1991. The action arose out of an investigation by the New York State Department of Environmental Conservation and the United States Environmental Protection Agency which identified certain of the named defendants as potentially responsible parties (PRPs) for the clean-up of an area known as the Union Road Site in 1986. An amended complaint was filed on March 8, 1993 adding Penn Central, Witben Realty, Sereth Properties, Wolsher, Inc., Universal Marion, and Louis E. Wolfson ("Wolfson") as party defendants. American Premier Underwriters, Inc. ("APU") was substituted for Penn Central, as a successor corporation, on May 18, 1994. On June 20, 1994, APU filed a cross-claim against Defendants Witben, Sereth, Wolsher, Universal Marion, and Wolfson alleging three causes of action, two claims under CERCLA and one state claim for contribution.

On April 17, 1995, APU filed a motion for summary judgment on its cross-claims under CERCLA. On the same day, Wolfson filed a motion for summary judgment on the ground that he was not liable to APU for any damages or costs under CERCLA or any other theory of liability. Witben, Sereth, Wolsher, and Universal Marion filed a similar motion.

On February 16, 1996, this court issued a Decision and Order, granting APU's motion for summary judgment as against Witben and Universal Marion as the current owners of the property in dispute, as against Witben and Universal Marion as the current operators, and denying APU's motion for summary judgment against Wolfson as a current owner and/or operator. The court also denied APU's motion for summary judgment as against Witben, Universal Marion, and Wolfson as operators of a facility at the time of disposal of hazardous wastes. The court denied Wolfson's motion for summary judgment against APU. The court granted Wolfson's, Witben's, and Universal Marion's motions for summary judgment on the theory of passive disposal during Witben's ownership

of the property. The court also granted Sereth Properties' and Wolsher's motion for summary judgment.

On June 24, 1996, Defendants Wolfson, Witben, and Universal Marion filed motions for reconsideration of issues decided in the February 16, 1996 Decision and Order. Thereafter, on July 15, 1996, Defendants Witben and Universal Marion filed a motion to certify legal issues for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), along with a supporting memorandum of law. On February 26, 1997, the court granted the motion for reconsideration of such issues and, upon reconsideration, adhered to its original ruling. On the same day, the court also denied the motion to certify legal issues to the Second Circuit for interlocutory appeal. Since that time, settlement negotiations have been ongoing, however, they have proved unsuccessful up until this time.

On August 11, 1997, APU filed a motion for leave to amend cross-claims seeking to add state law claims under Florida law, and to add additional parties. APU also filed a supporting memorandum of law. On September 19, 1997, Wolfson filed a memorandum in opposition to APU's motion. On the same day, Witben Realty and Universal Marion also filed a memorandum in opposition to the motion. On September 30, 1997, Universal Marion filed an affidavit in opposition to the motion from Richard M. Gray, President of Universal Marion. Thereafter, on October 23, 1997, APU filed a reply memorandum. Wolfson, Witben Realty and Universal Marion filed a surreply in response to APU's memorandum on November 7, 1997. A second affidavit from Richard M. Gray was filed on November 12, 1997. Oral argument on the matter was not deemed necessary.

For the reasons as set forth below, Defendant APU's motion to amend cross-claims is DENIED.

### DISCUSSION

■ It is well settled that leave to amend a pleading pursuant to Fed.R.Civ.P. 15(a) shall be freely given when justice so requires. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In the absence of any apparent reasons for denial of the motion to amend, such as undue delay, undue prejudice, bad faith, or futility of the amendment, leave to amend the pleading shall be freely given. *Foman, supra,* at 182, 83 S.Ct. at 230; *Albany Insurance Co. v. Esses,* 831 F.2d 41, 45 (2d Cir.1987). Justice does not require the court to grant leave when the amendment would be futile. *Foman, supra,* at 182, 83 S.Ct. at 230. "On a motion for leave to amend, the court need not finally determine the merits of a proposed claim or defense, but merely satisfy itself that it is colorable and not frivolous." *Sumitomo Electric Research Triangle, Inc. v. Corning Glass Works,* 109 F.R.D. 627, 628 (S.D.N.Y.1986).

In this case, in its proposed Fourth Cross–Claim, APU seeks to amend its cross-claims, originally filed on June 20, 1994, to assert a claim for a breach of fiduciary duty and for a violation of Florida's corporate dissolution law against potential defendants Richard M. Gray, Universal Marion president, director and shareholder, Monteen C. Tomberlin, Universal Marion secretary, director and shareholder, and Dennis M. Wolfson, Universal Marion officer, director and shareholder, and to claim that Defendant Louis Wolfson, The Wolfson Family Foundation, a major shareholder of Universal Marion, Saul Wolfson, a director and shareholder, and Cecil Wolfson, a major Universal Marion shareholder were given improper distributions of Universal Marion corporate assets. In its proposed Fifth Cross–Claim, APU seeks to further amend its cross-claims by adding a claim for fraudulent conveyance under the Florida Uniform Fraudulent Transfer Act against Universal Marion, Witben Realty, Louis Wolfson, Gray, Tomberlin, Dennis Wolfson, The Wolfson Family Foundation, Saul Wolfson, and Cecil Wolfson, seeking an order declaring all transfers to Universal Marion's shareholders and directors after December, 1982 to be void. Finally, in its proposed Sixth Cross–Claim, APU seeks to add a cross-claim under CERCLA against Cecil Wolfson as both an owner and operator of the hazardous land site.

### 1. *Cross–Claims under Florida law*

APU's proposed Fourth and Fifth Cross–Claims seek to add causes of action for a

breach of a fiduciary duty towards the claimants of Universal Marion and a violation of Florida's corporate dissolution law, Fla.Stat. § 607.257 *et seq.,* along with a claim for fraudulent conveyance of Universal Marion's assets to corporate shareholders pursuant to the Florida Uniform Fraudulent Transfer Act, Fla.Stat. § 726.101, *et seq.* APU alleges that, with knowledge that Universal Marion could be liable for damages and cleanup costs at the hazardous waste site known as the Union Road Site, the property at issue in this action, Universal Marion, Witben Realty, Louis Wolfson, Cecil Wolfson, Richard Gray, Monteen Tomberlin, and Dennis Wolfson voted to dissolve Universal Marion, commencing the three year statute of limitations on the initiation of new suits against Universal Marion, available under Florida law, Fla.Stat. 607.1406 (1997), and avoiding satisfaction of any liability for the Union Road Site. APU further alleges that Universal Marion refused to cooperate with the investigation of the Union Road Site, and instead, made distributions of its assets to its shareholders without setting aside sufficient assets for the cleanup costs at the Site.

Defendant Louis Wolfson, along with the other Defendants, noting that this case has been pending for six years and is now, after extensive motion practice resulting in summary judgment against Universal Marion and Witben, ready for trial, argues that the proposed amendment, adding six new defendants and new causes of action, would greatly delay the litigation and would be "inherently prejudicial." Wolfson's Memorandum of Law, at p. 7. Wolfson asserts that the proposed amendments will require discovery by all parties, old and new, into events alleged in the proposed Fourth and Fifth Cross–Claims, including discovery of third parties to determine whether such parties had actual knowledge of Universal Marion's dissolution. Wolfson also contends that there are serious issues of personal jurisdiction over proposed defendants Tomberlin, Dennis Wolfson, Saul Wolfson, and the Wolfson Family Foundation, none of whom satisfies jurisdictional requirements in New York state. Wolfson also claims that the Fourth and Fifth Cross–Claims may be time-barred under Florida law, and that serious questions

of Florida law may be raised such as whether a CERCLA claimant may rely upon state law to reach a parent corporation's shareholders, and whether Universal Marion had any duty under Florida law to give notice of its dissolution when it was Witben Realty which actually held title to the Union Road Site and it was only upon the court's much later piercing of Universal Marion's corporate veil that Universal Marion became liable as an owner.

Wolfson also argues that, while Universal Marion has been held liable under CERCLA, damages against Universal Marion have not yet been assessed. According to Wolfson, it is very possible that the damage assessment may be minimal given that it is "uncontested that [Universal Marion] did no more than hold and sell property in pursuit of its liquidation plan adopted in 1971," Memorandum of Law, at p. 15, and that it is thus possible that the damages assessed "will be within the range of its available assets." As such, Wolfson contends that "it makes no sense to complicate further this already complex and protracted case, and engender the prejudicial delay that will ensue, based upon mere anticipation of a Universal Marion shortfall." Memorandum of Law, at p. 15–16.

■ Upon review of the papers and the relevant case law, the court finds that permitting the addition of state claims for a breach of fiduciary duty, the fraudulent conveyance of assets and for an improper dissolution of a corporation under Florida law would be futile as these claims would be subject to dismissal. First, at the time that Universal Marion voted to dissolve, November 1, 1984, APU was not a creditor of Universal Marion and thus notice of the dissolution to APU was not required. In *City of Philadelphia v. Stepan Chemical Co.,* 713 F.Supp. 1491, 1493 (E.D.Pa.1989), a CERCLA action, the City of Philadelphia informed the Eastern States Paint and Varnish Company, in 1979, that hazardous wastes had been found at a landfill which originated with Eastern States. Thereafter, the stock of Eastern States was transferred to a trust. In December, 1981, the trustees of the trust liquidated the assets of Eastern States and distributed the proceeds of the liquidation to the trust. In November, 1983, the City filed

a CERCLA action, and in 1986, filed an amended complaint naming the trustees as covered persons under CERCLA. The court found that the City of Philadelphia was not a creditor of Eastern States at the time of its liquidation, nor was any legal claim pending against it. *Stepan Chemical Co., supra,* at 1493. Holding that to adopt the City's analysis, "no business incorporated in Pennsylvania could voluntarily dissolve and distribute its assets without first notifying every party who had ever requested compensation from or threatened litigation against it," the court found that, at the time of Eastern States' dissolution, the City was not a creditor who required notice of the dissolution. *Stepan Chemical Co., supra,* at 1494.[1]

Second, while APU argues that this court held, in its Decision and Order of February 16, 1996, that all state law claims were preempted by CERCLA, the court's ruling specifically stated that "the majority of the courts have held that CERCLA preempts state capacity statutes to the extent their operation would shield a *dissolved corporation from CERCLA liability.*" *Idylwoods Associates v. Mader Capital,* 915 F.Supp. 1290, 1303 (W.D.N.Y.1996) (emphasis added). The court did not, in its ruling, extend the preemption doctrine *per se* to all claims or defenses based on state law which could be raised in relation to a pending CERCLA action. It is not disputed that the statute of limitations period under Florida law for breach of a fiduciary duty is four years from the date of the breach, which, according to APU, was 1984. It is also not disputed that the statute of limitations period under Florida law for a violation of Florida's Corporate Dissolution law is three years from the date of such dissolution, which was November 1, 1984. Finally, the three year statute of limitations period also applies to an action based on a fraudulent transfer of corporate assets, beginning in this case on November 1, 1984, the date of dissolution.

In *Witco Corporation v. Beekhuis,* 38 F.3d 682 (3d Cir.1994), the plaintiff, owner of a parcel of land found to be a hazardous waste site, entered into a consent decree, in 1992, providing for the cleanup of a hazardous waste site. The plaintiff then sought contribution for the cleanup costs from defendant, the estate of a majority shareholder of the corporation which had previously owned the site prior to plaintiff. The plaintiff, who had become aware of the contamination in 1985, notified the shareholder of his potential liability under CERCLA in 1988. The shareholder died in 1989; the plaintiff did not take any action with respect to any CERCLA contribution against the decedent shareholder for approximately ten months. Under Delaware probate law, all claims against a decedent's estate were to be made within eight months of the decedent's death. The Third Circuit Court of Appeals, affirming the district court judgment, held that CERCLA did not preempt state nonclaim statutes, and found that the plaintiff was time-barred from pursuing a CERCLA claim against the estate where the claim was not made within the statutory eight month period.

In this case, the court finds that APU, through its predecessor Penn Central which was notified of its status as a potentially responsible party for the Union Road Site in 1986, was aware of the contamination of the Union Road Site, and Universal Marion's potential liability, prior to the expiration of the statute of limitations on the Florida state law claims. See Wolfson's Memorandum of Law, dated September 19, 1997, at p. 15. However, APU did not choose to pursue those claims at the time, nor in its initial claims against the named Defendants alleged in 1994. Following the analysis of the Third Circuit, the court concludes that CERCLA does not preempt the Florida state statutes of limitation sought to be asserted here, and that, as such, the claims proposed by APU would be time-barred.[2] Thus, any amend-

---

1. The court notes that the City did not allege that Eastern States' stock was fraudulently conveyed to the trust, or that the trustees attempted to defraud the City when they liquidated the corporation's assets and distributed them to the trust. *Stepan Chemical Co., supra,* at 1494.

2. Although *Witco* dealt with a nonclaim statute relating to a probate action, its reasoning applies with equal force to the nonclaim and statute of limitations aspects as set forth in Florida law § 607.1406 dealing with claims against dissolved corporations.

ment alleging such claims against the named and proposed defendants would be futile.

■ The court also notes that, except as to Cecil Wolfson, APU has not sought to assert CERCLA claims against proposed defendants Gray, Tomberlin, Dennis Wolfson, Saul Wolfson, or the Wolfson Family Foundation. As such, the court finds that the Florida state law actions as to these proposed defendants are also time-barred as there is no federal preemption as to the state statute of limitations based on CERCLA. *See A.S.I., Inc. v. Sanders,* 835 F.Supp. 1349, 1355 n. 1 (D.Kan.1993) (holding that a state action was time barred against certain defendants where no CERCLA claims had been advanced against such defendants and hence there was no federal preemption as to the state statute of repose). Accordingly, an amendment permitting the Florida state law claims against Gray, Tomberlin, Dennis Wolfson, Saul Wolfson, and the Wolfson Family Foundation would also be futile for this reason.

■ Finally, whether or not the court allows an amendment of a pleading is in the court's discretion. *Feinman v. Dean Witter Reynolds, Inc.,* 84 F.3d 539, 542 (2d Cir.1996) (denial of leave to amend is left to broad discretion of district court and will be reversed only for abuse of discretion). Prejudice may exist when extensive additional discovery would be required by the amendment or where further proceedings would be delayed significantly. *Richardson Greenshields Secs., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987). The court finds that this litigation, which has already been pending for over seven years, and is ready for trial, would not be furthered by permitting, at this late date, the addition of six new defendants, who may not even be within the jurisdiction of this court, and two new cross-claims under Florida state law, seeking to obtain the return of distributions made by Universal Marion, when no judgment has been rendered against Universal Marion. As Wolfson, Universal Marion, and Witben argue, it is possible that the remaining corporate assets may be adequate to meet the final judgment against Witben and Universal Marion. In any event, the court finds that the addition of these preemptive claims would only serve to greatly delay and prolong this litigation. Amendments to existing actions are granted when "justice so requires." *Foman, supra,* at 182, 83 S.Ct. at 230. However, Francis Bacon observed that "fresh justice is the sweetest." Francis Bacon, The Works of Francis Bacon 474 (Basil Montagu ed., Philadelphia, Carey & Hart 1853). Further delay in this case does not serve that transcendent human need. Thus, at this stage of the proceedings, the court concludes, in its discretion, that such delay is unwarranted. Accordingly, the court finds that the addition of Florida state law claims and proposed defendants allegedly liable under Florida state law should not be permitted.

For these reasons, APU's motion to amend the complaint to add the Fourth and Fifth Cross–Claims against the new defendants under Florida state law is DENIED.

### 2. *Cross–Claim Against Cecil Wolfson under CERCLA*

APU also seeks to add Cecil Wolfson as a named Defendant asserting claims under §§ 107 and 113 of CERCLA as the owner or operator of the Union Road Site. Specifically, APU alleges that, in May, 1997, it received four boxes of documents produced by Universal Marion from its warehouse in Florida, and that, contained in those boxes were numerous memoranda from Richard M. Gray, Universal Marion president, to Cecil Wolfson seeking Cecil Wolfson's advice, assistance and recommendations on issues including the contamination at the Union Road Site, the state and county's activities in connection with the Union Road Site, and ways to protect Universal Marion's property and assets. APU contends that through these memoranda, APU learned for the first time about Cecil Wolfson's central role in the management and operations of Universal Marion, and that Cecil Wolfson, along with his brother, Defendant Louis Wolfson, acted as an owner or operator within the meaning of CERCLA in consciously avoiding official requests to clean up the Union Road Site. APU asserts that it "should be given the opportunity to fully develop this avenue of recovery to increase APU's chances of obtaining contribution towards its extensive remediation costs incurred at the Site." APU's Memorandum of Law, at p. 9.

Defendant Wolfson argues that APU's explanation of why it now seeks to charge Cecil Wolfson with CERCLA liability is inadequate. Wolfson contends that APU passed on the opportunity to take Cecil Wolfson's deposition or to ask questions of other deponents regarding Cecil Wolfson's role with Universal Marion, and that the memoranda which APU claims shows Cecil Wolfson's central role within Universal Marion do not establish that Cecil Wolfson made any decisions with regard to the company. Rather, Wolfson asserts that the letters to Cecil Wolfson invariably consist of a few lines, enclosing documents from the corporation's attorney, and that APU has found no documents which show that Cecil Wolfson ever gave directions or orders to Richard Gray or anyone else regarding the Union Road Site. Wolfson Memorandum of Law, dated September 19, 1997, at p. 19.

The court has reviewed the documents which APU discovered in May, 1997. The documents appear to be cover letters enclosed with other documents submitted to Cecil Wolfson from Richard Gray. By way of example, a letter dated June 27, 1983 from Gray to Cecil Wolfson states as follows:

> Enclosed herewith please find a copy of a letter from attorney Charles Maxwell to me together with the enclosures concerning the disposal site on the Witben land in Buffalo. After you have had a chance to review the enclosures, you may want to discuss this further with me.

Exhibit A, Defendant Louis Wolfson's Opposition to APU's motion, dated September 19, 1997.

The remainder of the documents are similar. It is clear that, at a minimum, Cecil Wolfson was kept apprised of the Union Road Site situation, and the activities of Universal Marion related thereto.

■ However, an examination of the documents does not establish that Cecil Wolfson directed the activities of Universal Marion. Although the extent of Cecil Wolfson's involvement is unknown without further discovery, the court finds that, even without the discovery of such documents, APU was aware the Cecil Wolfson was a major Universal Marion shareholder, and that, by virtue of his relationship with Louis Wolfson, he could have been far more involved in Universal Marion transactions than APU first assumed. APU could have deposed Cecil Wolfson regarding his activities in relation to the Union Road Site, or conducted other discovery designed to determine Cecil Wolfson's involvement. The court concludes that to attempt to name Cecil Wolfson as a defendant, at this late date, based only upon the discovery of documents in May, 1997 which show that he was kept apprised of the Union Road Site situation, would greatly delay the litigation, and, as such, be prejudicial to the other Defendants. If Cecil Wolfson's identity and potential involvement in Universal Marion's business affairs had been heretofore unknown to APU, the court may have been persuaded otherwise. However, at a minimum, Cecil Wolfson's identity was known to APU and, as such, through discovery, APU could have ascertained, at a much earlier stage of these proceedings, whether or not there was evidence to establish that Cecil Wolfson was involved in Universal Marion activities in the capacity of an owner or operator as defined by CERCLA. By redirecting the case, as APU requests, Louis Wolfson and the other Defendants will necessarily incur substantial legal fees resulting from the additional discovery and inevitable and complex motion practice attendant to litigation of the proposed claims.

Finding that adding Cecil Wolfson as a defendant as an alleged owner or operator liable under §§ 107 and 113 of CERCLA would be prejudicial to all parties at this stage of the proceedings, the court, in its discretion, declines to allow APU to file such an amendment to its cross-claims. As such, APU's motion to amend its cross-claims to add a sixth cross-claim against Cecil Wolfson is DENIED.

### CONCLUSION

Based on the foregoing, APU's motion for leave to amend its cross-claims is DENIED. The parties are directed to contact the chambers of the Hon. William M. Skretny to schedule a trial of this matter.

**SO ORDERED.**